**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**CLIFFORD JOEL ELLISON**                                                              **PLAINTIFF**

**VERSUS**                                          **CIVIL ACTION NO.: 1:08cv262-HSO-JMR**

**KEN BROADUS; JACKSON COUNTY,**
**MISSISSIPPI; and MIKE BYRD**                                           **DEFENDANTS**

---

## REPORT & RECOMMENDATIONS:

      This matter is before the Court on the following motions: Defendants' Motion [60-1] for

Summary Judgment filed on behalf of Mike Byrd, Ken Broadus, and Jackson County, Mississippi

(collectively hereinafter "Defendants"); Plaintiff's Motion [52-1] for Summary Judgment; and

Defendants' Motion [53-1] to Strike.  The Court begins by noting that the Plaintiff's Motion [52-1]

for Summary Judgment is simply a recitation of his allegations against the Defendants.  In fact,

Plaintiff's motion reads more like a response to a motion to dismiss, rather than an independent

motion for summary judgment.  Plaintiff's motion is accompanied by what he titles a "written

deposition," [51-1] however, this document also is a recitation of Plaintiff's allegations. Defendants'

filed a Motion [53-1] to Strike this "written deposition" and for reasons discussed in detail *infra* this

Court is of the opinion that Defendants' motion should be granted and Plaintiff's "written

deposition" stricken.  However, this Court notes that even if it were to consider Plaintiff's "written

deposition," the opinions contained herein remain unchanged.  Thus, despite the liberality afforded

the pleadings of *pro se* litigants, the Plaintiff has failed to meet his burden of demonstrating the

absence of a genuine issue of material fact.  Therefore, this Court is of the opinion that Plaintiff's

Motion [52-1] for Summary Judgment should be denied.

Defendants' Motion for Summary Judgment is accompanied by a Memorandum [61-1] in Support thereof. Plaintiff filed a Response [64-1] in Opposition. The Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, recommends that Defendants' Motion [60-1] for Summary Judgment be granted and Plaintiff's claims be dismissed with prejudice.

<u>**STATEMENT OF THE CASE**</u>:

Plaintiff filed this *pro se* § 1983 action against the Defendants alleging that he suffered violations of his constitutional rights while being detained as a pretrial detainee at the Jackson County Adult Detention Center ("JCADC") on June 24, 2008.[1]

<u>**FACTS:**</u>

Plaintiff was arrested in Jackson County on the charges of Possession of Burglary Tools and Malicious Mischief. On April 19, 2008, he was booked and detained at the JCADC to await trial on the pending charges. Approximately eight weeks later, on June 24, 2008, Plaintiff filed his original Complaint against Ken Broadus, Mike Byrd, Aramark, Milika Rushing, Patrice Poole, and the JCADC. On July 16, 2008, Plaintiff voluntarily dismissed the JCADC and added Jackson County, Mississippi as a defendant. Plaintiff's claims against Defendants Aramark, Milika Rushing, and Patrice Poole were dismissed from this cause on March 26, 2009, by Court Order [42].

In his Complaint and pleadings, Plaintiff contends that he was subjected to unconstitutional conditions of confinement, denied medical treatment and subjected to excessive force at the hands of JCADC employees. The Court notes that the great majority of Plaintiff's pleadings are dedicated

---

[1] The Court notes that Plaintiff does not specify whether his claims are against Defendant Broadus or Defendant Byrd in their individual capacity, their official capacity, or both. Because *pro se* complaints must be construed liberally, the Court will interpret Plaintiff's Complaint to allege claims against Defendants Broadus and Byrd in both their individual and official capacities. *See Williams v. Love,* 2006 WL 1581908, *5 (S.D.Tex. 2006).

to challenging the conditions of his confinement at the JCADC.  For instance, Plaintiff alleges that he was not provided an inmate handbook and therefore he is kept unaware of the rules, regulations and policies that govern the JCADC.  Further, Plaintiff claims grievance forms are not timely provided and that the responses are unsatisfactory.  Also, Plaintiff alleges that the jail does not have a disciplinary committee and therefore punishments are handed down without any guidelines.

Plaintiff further alleges that the JCADC is kept in deplorable condition due to the facility's failure to properly clean the premises.  Plaintiff alleges that there is black mold on the ceiling, air ducts and showers.  Plaintiff also complains of insects in the JCADC.

Plaintiff also alleges that the JCADC is operated in a manner such that it denies him due process.  Plaintiff alleges that the facility is overcrowded, and this causes or contributes to numerous problems.   For instance, Plaintiff alleges that twenty-seven inmates were housed in a ten man zone and that 400-450 inmates were in a prison that was designed to only hold 180 inmates.  Plaintiff claims that he had to ask other inmates for permission to use the toilet or sink in their cell, and Plaintiff contends that the close proximity of inmates leads to inmate violence.  Also, Plaintiff alleges that inmates are routinely denied adequate amounts of personal hygiene products such as soap and toilet paper and that "yard call" or recreation periods are only given once every two weeks.

Plaintiff's remaining condition of confinement claims consist of being denied access to a law library and not being tested for Tuberculosis.  Also, Plaintiff claims that Aramark, the company that operates the prisoner canteen, charges exorbitant prices for their products, including overcharging for stamps and other items.

Lastly, Plaintiff makes allegations of various  episodic acts and omissions by the JCADC staff.  Plaintiff alleges that he was yelled at, stepped on, dragged and kicked by JCADC officers for the purpose of inflicting pain and fear on the inmates.  Also, Plaintiff claims that while he was

assigned to Zone K-E he was kicked in the ribs and back by JCADC officers during a raid. Plaintiff also alleges that he was denied medical treatment for pain related to his kidney stones.

Plaintiff's allegations against Defendants Aramark and its employees, Milika Rushing and Patrice Poole, were dismissed with prejudice on March 26, 2009. (*See* Order [42].) Plaintiff had asserted that Aramark, Rushing and Poole routinely denied he and other inmates the privilege of purchasing items from the commissary. Also, Plaintiff contended that Aramark, Rushing and Poole violated his right to Due Process because he was not provided a hearing before having his commissary privileges suspended. This Court determined that there was no indication that either Aramark, Rushing or Poole was a state actor that could be held liable pursuant to 42 U.S.C. § 1983 and that their alleged conduct concerning the operation of the commissary at the JCADC did not violate any cognizable right. Therefore, this Court dismissed with prejudice Defendants Aramark, Rushing and Poole. *Id.*

## STANDARD OF REVIEW:

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987). "The requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the

opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986). To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *See Howard*, 783 F.2d at 1315.

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights. Therefore, section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F. 2d 680,693 (5th Cir. 1981). A plaintiff cannot succeed merely by showing any deprivation of his rights. Section 1983 was intended to protect rights protected by federal law. *Karmi-Panahi v. Los Angles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985). It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers. Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978).

*Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such reading. *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The three requirements for municipal liability outlined in *Piotrowski* are necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79. The United States Supreme Court has clearly emphasized the necessity of an official policy as a predicate to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom. *Piotrowski*, 237 F.3d at 578.

In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *Id.* at 580; *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must

maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264. The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999). *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (Stating that these two requirements "must not be diluted").

## ANALYSIS:

Before beginning an analysis of Plaintiff's claims, this Court addresses Defendants' Motion [53-1] to Strike. Plaintiff filed this *pro se* § 1983 action against Defendants on June 24, 2008. On May 11, 2009, Plaintiff filed a Motion [52-1] for Summary Judgment. Also on May 11, 2009, Plaintiff filed Document #51 which he has titled "Deposition." The Defendants seek to strike Plaintiff's Written [51-1] Deposition on the grounds that it is not a deposition that is contemplated by FED. R. CIV P. 30 nor is it sworn-to by the Plaintiff. The Defendants note that the document was not subject to cross examination and they claim that it is an unsworn statement that only contains conclusory allegations which are inadmissable. Plaintiff responds by claiming that his Written [51-1] Deposition does not have to be sworn-to. (*See* Pl.'s Resp. [57-1].)

The Court notes that Plaintiff did sign Document #51, Clifford Joel Ellison. However, Plaintiff's Document #51 was not subject to cross examination by the Defendants, nor was it in response to questions submitted by the Defendants pursuant to FED. R. CIV P. 30. Therefore, the Court finds that Plaintiff's Written [51-1] Deposition is clearly not a deposition that was

contemplated by FED. R. CIV P. 30. Plaintiff's Document #51 more closely resembles an affidavit used in support of a summary judgment motion. The Court believes Plaintiff mislabeled Document #51 a deposition instead of an affidavit. Therefore, the Court will treat Plaintiff's Document #51 as an affidavit.

Affidavits must be made on personal knowledge, setting forth "such facts as would be admissible in evidence." FED. R. CIV. P. 56(e). "Setting forth mere statements of conclusions of law or ultimate fact are insufficient to support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985). Title 28 Section 1746 of the United States Code states:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).
>
> (Signature)".
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
>
> (Signature)".

28 U.S.C. § 1746.

"It is a settled rule in [the Fifth] circuit that an unsworn affidavit is incompetent to raise a fact

issue precluding summary judgment." *Roth v.* Morgan, 160 Fed. Appx. 409, 410 (5th Cir. 2005) (citing *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988)). "A statutory exception to this rule exists under 28 U.S.C. § 1746, which permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made 'under penalty of perjury' and verified as 'true and correct.'" *Kline*, 845 F.2d at 1306. Unsworn documents are not appropriate for consideration in a summary judgment motion. *Martin v. John W. Sone Oil Distributor, Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); *See also Watts v. Kroger Co.*, 170 F.3d 505, 508 (5th Cir. 1999) (finding that statements that were signed, but were not sworn, notarized, or in the form of affidavits and did not comply with federal requirements for unsworn declarations were not competent summary judgment evidence.) Plaintiff's affidavit is not in substantial conformity with either formula because, as drafted it allows the affiant to circumvent the penalties for perjury in signing onto intentional falsehoods. Plaintiff never declared his statements to be true and correct; therefore, his affidavit must be disregarded as summary judgment proof.

After careful consideration, the Court is of the opinion that Document #51 should be stricken as it fails to conform to the requirements for competent summary judgment evidence under FED. R. CIV. P. 56(e). However, as stated earlier, even if the Court were to consider Plaintiff's Document #51, the opinions contained herein would remain unchanged. The Court now turns to the merits.

As a pretrial detainee, Plaintiff's constitutional rights flow from the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Because they have not yet been convicted of the crime with which they are charged, pretrial detainees have a due process right not to be punished for that crime. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). The Supreme Court has stated the distinction between conditions that may be constitutionally imposed on convicted prisoners and conditions that may be imposed on pretrial

detainees as follows:

> [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. **Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.**

*Ingraham v. Wright,* 430 U.S. 651, 671-72 (1977) (emphasis added).

The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees depends on whether the alleged unconstitutional conduct is a "condition of confinement"[2] or "episodic act or omission." *See Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997) (en banc).   The Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement that constitute "punishment." *Hamilton v. Lyons,* 74 F.3d 99, 103 (5th Cir.1996).  "Punishment" may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal-if it is arbitrary or purposeless" *Bell*, 441 U.S. at 539.  "Reasonably related" means that the restriction is (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose. *Id.* at 561.  "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules." *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 646 (5th Cir.1996).

When a pretrial detainee alleges unconstitutional conduct which involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's

---

[2] The following were deemed to be conditions-of-confinement cases: *Murphy v. Walker,* 51 F.3d 714 (7th Cir.1995) (revocation of telephone, television, and cigarette privileges); *Collazo-Leon v. United States Bureau of Prisons,* 51 F.3d 315 (1st Cir.1995) (disciplinary segregation and denial of telephone and visitation privileges); *United States v. Millan,* 4 F.3d 1038 (2d Cir.1993) (length of pre-trial detention); *Hause v. Vaught,* 993 F.2d 1079 (4th Cir.1993) (restriction on mail privileges); *Brogsdale v. Barry,* 926 F.2d 1184 (D.C.Cir.1991) (overcrowding); *Lyons v. Powell,* 838 F.2d 28 (1st Cir.1988) (22-23-hour confinement and placement of mattress on floor); *Fredericks v. Huggins,* 711 F.2d 31 (4th Cir.1983) (policy of refusing detainees access to drugs for rehabilitation); *Lareau v. Manson,* 651 F.2d 96 (2d Cir.1981) (overcrowding).

constitutional rights. *Gibbs v. Grimmette,* 254 F.3d 545, 548 (5th Cir. 2001). When the alleged constitutional violation is a particular act or omission by an individual that points to a derivative policy or custom of the municipality, the deliberate indifference standard is also appropriate. *Scott,* 114 F.3d at 53-54. To prove deliberate indifference, a pretrial detainee must show that the state official knew of and disregarded an excessive risk to the inmate's health or safety. *See Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir.1999).

The Court notes that Plaintiff's Complaint alleges both unconstitutional conditions of confinement and episodic acts or omissions. Therefore, the Court shall address the two categories of allegations individually.

## I. Conditions of Confinement:

Plaintiff alleges that the Defendants are officially liable because they failed to remedy the allegedly unconstitutional conditions at the JCADC. The Court notes that Plaintiff's official capacity claims against the Defendants are, in reality, claims against the office in which they occupied at the time of the alleged incident and, ultimately, Jackson County. Therefore, to the extent Plaintiff brings this action against the Defendants in their official capacities, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the JCADC had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the JCADC's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

The great majority of Plaintiff's Amended Complaint is dedicated to challenging the constitutionality of his conditions of confinement at the JCADC. However, other than the previously noted allegations of unconstitutional conditions, Plaintiff presents no evidence that an official policy of the JCADC was responsible for the alleged violation of his constitutional rights. The Court finds

that such bare allegations, without more, are simply insufficient to support a claim that there existed

a policy or custom which was the moving force behind any alleged constitutional violation. At best,

Plaintiff's assertions amount to isolated instances of negligent conduct, which are insufficient to

support the instant official capacity claims against the Defendants. Accordingly, the Defendants are

entitled to summary judgment on Plaintiff's official capacity claims as they relate to the conditions

of the JCADC.

Additionally, Plaintiff's Complaint seeks to impose liability against Defendants Broadus and

Byrd in their individual capacities for the allegedly unconstitutional conditions at the JCADC.

However, because Defendants Broadus and Byrd are law enforcement officials, they may raise the

defense of qualified immunity. *See Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986).

In assessing a claim of qualified immunity, the determination must first be made as to

whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v.*

*Gilly*, 500 U.S. 226, 231 (1991). As a pretrial detainee, Plaintiff has a constitutional right not to

be punished for the crimes with which he has been charged. Therefore, to the extent that Plaintiff

seeks to establish § 1983 liability against Defendants Broadus and Byrd, Plaintiff must offer proof

that the conditions at the JCADC were imposed as a form of punishment. *Hamilton,* 74 F.3d at 103.

A punitive purpose can be established by direct evidence of intent by detention facility officials to

punish the pretrial detainee. *Bell,* 441 U.S. at 538. Alternatively, a punitive purpose may be inferred

if the challenged condition is not reasonably related to a legitimate governmental objective. *Id.* at

539.

The Court finds that Plaintiff's allegations concerning the cleanliness of the JCADC facilities

do not rise to the level of constitutional violations. Plaintiff claims that the facility is extremely

filthy and that spiders, ants and termites are a problem at the JCADC. Also, Plaintiff alleges that the

air ducts, ceilings and showers of the JCADC are covered in black mold. Despite these allegations, the Court notes that Plaintiff offers no evidence that the Defendants maintain the facility in this manner as a form of punishment. Furthermore, the evidence is clear that the Defendants try to maintain the JCADC in a serviceable condition. Officers take a clean up cart three times a week to each zone and spray down the rooms and cells with bleach. (*See* Ex. "8" Attach. Defs.' Mot. [60-2] Summ. J.) Trustees use comet and paper towels to clean the areas. *Id.* Also, the inmates, including the Plaintiff, are given a mop, bucket, broom, dust pan, toilet brush, shower brush, garbage bag and soap to do any further cleaning they see fit. *Id.* Furthermore, the trash is picked-up every night. *Id.* Also, Plaintiff acknowledges that exterminators are utilized for pest control at the jail. (*See* Doc. [1-2].) Although the facilities are not kept to Plaintiff's liking, "there is . . . a *de minimis* level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. at 539 (*citing Ingraham v. Wright*, 430 U.S. 651, 674 (1977)).

Plaintiff alleges that inmates are unreasonably denied an opportunity to exercise in the form of "yard calls," although, Plaintiff makes no specific allegations as to him ever being denied recreation. He claims that inmates are only given yard call once every two weeks. (*See* Pl.'s Compl. [1-1] 4.) However, the Court finds that Plaintiff's contentions are not supported by the available evidence. The Defendants assert that recreation is provided as staffing and weather permits. (*See* Ex. "6" Attach. Defs.' Mot. [60-2] Summ. J.) Furthermore, Defendants contend that while Plaintiff was housed at the JCADC his zones were offered recreation on fifteen different days. (*See* Exs. "5," "7" Attach. Defs.' Mot. [60-2] Summ. J.) Plaintiff was housed at the JCADC from April 19, 2008 to July 31, 2008, almost fifteen weeks. (*See* Exs. "2," "4," "5" Attach. Defs.' Mot. [60-2] Summ. J.) Thus, Plaintiff was offered recreation on average once a week. The Court notes that Plaintiff has presented no direct evidence to indicate that he was ever denied a recreation period as a form of

punishment. Furthermore, Plaintiff has presented no evidence to establish that the alleged infrequency of yard calls was not reasonably related to a legitimate penalogical interest such as assuring inmate security. This issue does not rise to an actionable claim.

Plaintiff further alleges that the JCADC is overcrowded. At the outset, the Court notes that, absent some indication of punitive intent, the mere overcrowding of a jail does not violate the Fourteenth Amendment. *See Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004); *Crook v. McGee*, 2008 WL 53269, *2 (S.D. Miss. 2008); *Robertson v. Coahoma County, Miss.*, 2008 WL 3334091, *5 (N.D.Miss. 2008). Plaintiff makes no direct allegations that Defendant Broadus or Defendant Byrd intentionally operated the JCADC in an overcrowded condition as a form of punishment. While the Defendants concede that the JCADC is operated on occasion above preferred capacity, they argue that a new building has been constructed in order to remedy this problem and others are currently in the planning stages. The Court finds that Plaintiff has failed to establish that the overcrowding at the JCADC is not reasonably related to a legitimate governmental interest such as balancing an overwhelming number of detainees with a finite amount of available housing.

Plaintiff additionally contends that the overcrowding causes or significantly contributes to a myriad of problems for the incarcerated inmates. For instance, Plaintiff alleges that inmates are forced to sleep on mats on the floor and that the close proximity of inmates living together leads to inmate violence. However, the Court notes that Plaintiff has made no allegations or offered any evidence that Defendant Broadus or Defendant Byrd is capable of operating the JCADC in a different manner, but chooses not to as a form of punishment. The Court further finds that Plaintiff's specific allegations do not rise to the level of constitutional violations. Pretrial detainees do not have a constitutional right to an elevated bed. *Mann v. Smith*, 796 F.2d 79, 85-6 (5th Cir. 1986). Furthermore, Plaintiff has not presented any evidence or even made an allegation that he was

ever in an altercation with or injured by another inmate. Such conclusory allegations are insufficient to survive a motion for summary judgment. This issue does not rise to an actionable claim.

Plaintiff also makes allegations concerning the alleged deprivation of necessary personal hygiene items, specifically, soap and toilet paper. Plaintiff alleges that county-issued soap is only passed out once every two to three weeks and that a small roll of toilet paper is only passed out once a week. Plaintiff has failed to allege that he was deprived soap or toilet paper for the purpose of punishment, and has presented no evidence to suggest that the deprivation was not reasonably related to a legitimate governmental interest. Furthermore, "there is . . . a *de minimis* level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. at 539 (*citing Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). This issue does not rise to an actionable claim.

Plaintiff's allegation that he was not timely provided with grievance forms does not rise to the level of a constitutional violation. First, Plaintiff fails to allege that he was denied a standard grievance form as a form of punishment. Also, Defendants note that grievances are accepted even if they are not written on any specific form. (*See* Ex. "6" Attach. Defs.' Mot. Summ. J.) Plaintiff himself submitted a grievance on standard paper. (*See* Ex. "1" Attach. Pl.'s Compl. [1-2].) Further, no punitive intent can be inferred, as Plaintiff acknowledges that he did eventually receive grievance forms and responses, but complains that the responses were not satisfactory. The Court notes that Plaintiff has no constitutional right to have grievances resolved in a satisfactory manner. *See Geiger v. Jowers*, 404 F.3d 371, 74 (5th Cir. 2005). This issue is without merit.

Plaintiff's allegation that he was not provided an inmate handbook fails to rise to the level of a constitutional violation. Plaintiff makes no allegations nor presents any evidence to warrant an inference that he was denied a handbook for punitive reasons. Rather, Defendants state that Plaintiff was not provided a handbook upon entry into the JCADC because the facility was in the

process of publishing new, updated inmate handbooks. (*See* Ex. "6" Attach. Defs.' Mot. [60-2] Summ. J.)  Furthermore, Plaintiff was never subjected to any disciplinary actions or punishment by the Defendants and he never received an RVR, rules violation report, during his stay at the JCADC. (*See* Exs. "5," "6" Attach. Defs. Mot. [60-2] Summ. J.) The Court finds that Plaintiff has failed to establish that the deprivation of an inmate handbook was not reasonably related to a legitimate governmental interest.  This issue does not rise to an actionable claim.

To the extent that Plaintiff indicates that he was subjected to disciplinary proceedings without Due Process, the Court finds that Plaintiff's allegations are conclusory without one scintilla of evidence offered to support them.   Plaintiff fails to specify any rule violation for which he was allegedly cited, the date these alleged violations took place, or the punishment which was allegedly imposed.  Furthermore, a review of Plaintiff's inmate records reveal that Plaintiff was never assigned to the "B-boy lockdown" zone for rule violations.   (*See* Ex. "5" Attach. Defs.' Mot. [60-2] Summ. J.)

Plaintiff complains of his mother receiving a bill in Texas for the costs of extraditing the Plaintiff to Mississippi. (*See* Pl.'s Compl. [1-2]; Pl's Am. [7-1] Compl.)  However, the Plaintiff submits no evidence of the existence of this bill, he does not enlighten the Court as to who sent the bill, and he does not present any law demonstrating how receiving a bill is a constitutional violation. Plaintiff has failed to establish any violation of a clearly recognizable constitutional right.

Further, Plaintiff's allegation that the prison canteen overcharges for ordinary, everyday items does not rise to the level of a constitutional violation.   First, the Court has found numerous authorities asserting that inmates do not  have a constitutional right to commissary privileges.  *See Sandin v. Conner,* 515 U.S. 472, 478 (1995); *Malchi v. Thaler,* 211 F.3d 953, 958 (5th Cir.2000).  Furthermore, there is no legal basis to demand that inmates be offered items to be purchased at or

near cost. *See Hardin v. Johnson,* No. 1:08cv036, 2008 WL 906489, *4 (N.D.Miss.,2008); *French v. Butterworth,* 614 F.2d 23, 25 (1st Cir.1980); *see also Pepper v. Carroll,* 423 F.Supp.2d 442, 449 (D.Del.2006) (prisoner has no constitutionally protected right to purchase commissary items as cheaply as possible); *Rodriguez v. Swanson Serv. Corp.,* No. 01-117-P-C, 2001 WL 506871 at * 1 (D.Me. May 11, 2001) (commissary pricing does not implicate constitutional concerns); *Hopkins v. Keefe Commissary Network Sales,* No. 07-745, 2007 WL 2080480 at *5 (W.D.Pa. Jul.12, 2007) (no right to restrain commissary from charging even exorbitant prices); *Trujillo v. Young,* No. 7:02CV01083, 2003 WL 23312781 at *3 (W.D.Va. Jun.5, 2003) (prisoner has no protected right to purchase commissary items at low prices). This issue is without merit.

Also, Plaintiff claims that he was placed on commissary restriction for thirty days by Aramark and two of its employees without the knowledge of Defendant Broadus. (*See* Pl.'s Compl. [1-1, 1-2].) As stated previously, Aramark and its employees have been dismissed from this suit. (*See* Order [42].) Plaintiff claims that his grandmother sent him the wrong type of money order, because he did not know that Aramark only accepted U.S. Postal money orders. While the money order situation was being straightened out, Plaintiff claims that he was restricted from commissary paper, pen, razor and hygiene supplies for two weeks and other items for thirty days. (*See* Pl.'s Compl. [1-2], Am. [7-1] Compl.) As the Court noted earlier, inmates do not have a constitutional right to commissary privileges. *Sandin*, 515 U.S. at 478; *Malchi*, 211 F.3d at 958. Also, hygiene supplies are provided to inmates at the JCADC on a regular basis without having to be purchased at the commissary. (*See* Exs. "6," "9" Attach. Defs.' Mot. [60-2] Summ. J.) Plaintiff claims that for the two weeks he was without paper and a pen he was unable to write his mother, lawyer or the courts. Defendants note, however, that within this time period Plaintiff was able to write and file a Request for Production of Documents in this action, document #48. Even if Plaintiff's claim is

taken to be true it is *de minimus* and not a violation of *Bell, supra*. Plaintiff also claims that he was forced to go hungry because he was unable to purchase food at the commissary. (*See* Am. [7-1] Compl. 5.) However, regardless of any food an inmate purchases at the commissary, inmates are still provided three meals a day in accordance with a menu prepared by a registered dietician. (*See* Ex. "6" Attach. Defs.' Mot. [60-2] Summ. J.) This issue does not rise to an actionable claim.

Plaintiff also asserts that he was not administered a tuberculosis test upon his entry into the JCADC and that he was forced to live around inmates that possibly had tuberculosis. Defendants concede that Plaintiff's allegation regarding the tuberculosis vaccine is true. However, Defendants also claim that there was no evidence of a tuberculosis outbreak at the JCADC during Plaintiff's stay. The Court is unaware of any constitutional right to be tested for tuberculosis, and therefore finds Plaintiff's claim to be frivolous and unworthy of further discussion.

Finally, Plaintiff's allegations regarding the alleged lack of access to the legal library are insufficient to state a constitutional claim. Plaintiff's specific claim is that he was denied access to the law library and thus could not file motions or research his case. (*See* Pl.'s Compl. [1-1, 1-2].) The Court notes that inmates have a right of access to a law library or legal assistance. *Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir. 1996). However, in order for Plaintiff to succeed in an access to the courts claim, he must show actual injury, which includes evidence proving that the denial of legal resources hindered his efforts to pursue a non frivolous case. *See McDonald v. Steward,* 132 F.3d 225, 230-31 (5th Cir. 1998). In the present instance, Plaintiff has presented no evidence that he was prejudiced or harmed in pursuit of this or any legal matter. Furthermore, Plaintiff clearly had counsel pertaining to his criminal proceedings as he complains of difficulty in writing said counsel. (*See* Pl.'s Compl. [1-2] 1.) Also, Plaintiff acknowledges that he was given assistance by a paralegal in filing his motion for discovery. (*See* Pl.'s Compl. [1-2] 5.) This issue does not rise to an

actionable claim.

After a careful analysis of Plaintiff's allegations concerning the conditions of his confinement at the JCADC, the Court finds that Defendants Broadus and Byrd are entitled to qualified immunity as to Plaintiff's individual capacity claims. Plaintiff has failed to provide any direct evidence that Defendant Broadus or Defendant Byrd imposed any of the alleged conditions as a punitive measure. Furthermore, Plaintiff has failed to submit evidence tending to prove that the alleged conditions were not reasonably related to a legitimate governmental interest. Therefore, Plaintiff has failed to establish a violation of a clearly recognizable constitutional right.

## II. Episodic Acts and Omissions:

In addition to the allegations concerning the conditions of the JCADC, Plaintiff also alleges that the Defendants are liable in both their official and individual capacity for various episodic acts and omissions which constituted deliberate indifference to his constitutional rights.

## A. Excessive Force:

Plaintiff's Complaint makes allegations regarding instances of violence involving the employees of the JCADC. Plaintiff alleges that on different occasions officers would come into the zones and "push, kick, hit, and step on you." (*See* Pl.'s Compl. [1-2] 8.) Also, Plaintiff claims that teams of officers and dogs would enter the zones and that he was "yelled at, stepped on, dragged, kicked for no reason." (*See* Am. [7-1] Compl. 6.) While being housed in Zone K-E, Plaintiff asserts that during a raid he was "kicked in the ribs and back" even after he followed the officers' instructions. Plaintiff asserts that the Defendants are liable in both their individual and official capacities for these alleged incidents.

Defendants note that when the JCADC receives information believed to be reliable that there are weapons, drugs or other dangerous contraband in a cell block, a team is sent into the cell block

to secure the inmates and to search for weapons and other contraband. (*See* Ex. "6" Attach. Defs.' Mot. [60-2] Summ. J.) Defendants claim that this usually entails having the inmates get down on the floor for the officers' protection and that dogs are sometimes used for control and to locate contraband. *Id.* Defendants claim that the legitimate government objective for these shakedowns is the security of the facility.

Plaintiff's official capacity claim against the Defendants is, in reality, a claim against the office which they occupied at the time of the alleged incident and, ultimately, Jackson County. Therefore, to the extent Plaintiff brings this action against the Defendants in their official capacities, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the JCADC had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the JCADC's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Other than the above allegations of incidents of allegedly unconstitutional conduct, Plaintiff presents no evidence that an official policy of the JCADC existed which violated his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. Plaintiff has presented no evidence that Defendant Broadus or Defendant Byrd were involved in the alleged assaults against him or was even aware that they had occurred. At best, Plaintiff's assertions amount to isolated incidents of negligent conduct, which, by themselves, are insufficient to support the instant official capacity claim against the Defendants.

To the extent that Plaintiff seeks to hold Defendant Broadus or Defendant Byrd liable in their individual capacity, each asserts that he is entitled to the defense of qualified immunity. Also,

Defendants Broadus and Byrd note that Plaintiff has not alleged that either of them assaulted Plaintiff. As the Supreme Court reiterated in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1952, 173 L. Ed. 2d 868, 887 (2009), in cases similar to the case *sub judice*, where the doctrine of *respondeat superior* is inapplicable, a defendant cannot be held liable unless he himself acted on account of a constitutionally protected characteristic. Since "vicarious liability is inapplicable to... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 1948, 173 L. Ed. 2d 868 (2009). "A Complaint must state a claim that is plausible on its face." *Id.* at 1949-50, 1953, 173 L. Ed. 2d 868 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). As was the case in *Iqbal*, here the Plaintiff's Complaint does not contain any factual allegations sufficient to plausibly suggest Defendant Broadus or Defendant Byrd themselves violated a constitutional right of the Plaintiff. Therefore, Plaintiff's pleadings do not meet the standard necessary to comply with Federal Rule of Civil Procedure 8 and subject Defendant Broadus or Defendant Byrd to liability in his individual capacity.

However, out of an abundance of caution, the Court will analyze Defendant Broadus and Byrd's claim of qualified immunity. In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert*, 500 U.S. at 231. While Plaintiff alleges, in his original Complaint [1-1], that assaults on other inmates perpetrated by the employees of JCADC occurred, the Court notes that Plaintiff has no standing to assert the claims of these individuals. *See Warth v. Seldin*, 422 U.S. 490, 498-99 (1975). Plaintiff has provided no names of witnesses who may have observed these alleged assaults and he identifies no specific individuals who perpetuated these alleged assaults. Finally, the Court notes that there is a conspicuous absence of any medical requests, sick call slips,

or grievances seeking medical treatment for any injuries sustained from the alleged assaults. While Plaintiff claims he was assaulted on different occasions by JCADC employees, Plaintiff does not present any evidence that he suffered any physical injury. The Court notes that § 1983 imposes liability only for violations of constitutional rights, and not merely for violations of duties of care arising under tort law. Thus, not every injury caused by a state official is actionable under § 1983. *Hinojosa v. City of Terrell, Tex.*, 834 F.2d 1223, 1229 (5th Cir. 1988); *Mark v. Caldwell*, 754 F.2d 1260, 1261 (5th Cir. 1985) (recognizing that § 1983 does not provide a cause of action for every injury wrongfully inflicted by a state officer). Accordingly, § 1983 remedies are limited to official conduct that (1) caused some meaningful injury, (2) was grossly disproportionate to the need presented, and (3) was motivated by malice. *Hinojosa*, 834 F.2d 1229. Therefore, the Court is left to conclude that Plaintiff has failed to create a genuine issue as to whether he suffered a violation of his constitutional rights.

Assuming, *arguendo*, that Plaintiff has raised a genuine issue as to whether his constitutional rights were violated, the Court finds that Plaintiff has presented no evidence of any unreasonable conduct on behalf of Defendant Broadus or Defendant Byrd. Even if the conduct violates a constitutional right, qualified immunity is applicable if the conduct was objectively reasonable. *Hare v. City of Corinth, Miss*, 135 F.3d 320, 327 (5th Cir. 1998). In order to overcome the bar of qualified immunity, Plaintiff must allege that a Defendant's conduct was objectively unreasonable in response to the alleged assaults recounted in Plaintiff's Complaint.

The Court notes that Plaintiff has presented no evidence that Defendant Broadus or Defendant Byrd was involved in any of these alleged assaults or was even aware that they had occurred. Plaintiff does, however, in his Response [64-1] to Defendants' Motion for Summary Judgment, make the allegation, based upon Major Broadus' affidavit, that Defendant Broadus was

"within eyesight" of these shakedowns. (*See* Pl.'s Resp. [64-1] Mot. Summ. J. 9.) However, Plaintiff

does not elaborate any further. This Court notes that Defendant Broadus' affidavit does not imply

that he was present during any of the alleged shakedowns, but it merely states the policy and purpose

of shakedowns. (*See* Ex. "6" Attach. Defs.' Mot. [60-2] Summ. J.) Regardless, it appears that

Plaintiff seeks to establish Defendants' liability based on the conduct of their employees. However,

the doctrine of *respondeat superior* is inapplicable in Section 1983 cases. *Williams v. Luna*, 909

F.2d 121, 123 (5th Cir. 1990). Therefore, because Plaintiff is unable to present any evidence of

Defendant Broadus or Defendant Byrd's personal involvement in the alleged assaults, any evidence

of their knowledge of the alleged conduct of their employees, or any other unreasonable conduct on

their behalf, the Court finds that Defendant Broadus and Defendant Byrd are entitled to qualified

immunity against Plaintiff's individual capacity claims.

Although he has not presented any evidence that he suffered any physical injuries from the

alleged assaults or conditions at the JCADC, Plaintiff contends that his experiences left him with

mental anguish, stress, suffering and in a state of fear for his life. (*See* Am. Compl. [7-1] 9.)

However, pursuant to the Prison Litigation Reform Act, "no federal civil action may be brought by

a prisoner... for mental or emotional injury suffered while in custody without a prior showing of

physical injury." 42 U.S.C. § 1997e(e). If a prisoner cannot provide evidence of a physical injury,

the PLRA bars recovery for mental and emotional damages. *See Harper v. Showers*, 174 F.3d 716,

719 (5th Cir. 1999). In order to determine whether a prisoner has sustained the necessary physical

injury to support a claim for mental or emotional suffering, the "injury must be more than *de

minimis*, but need not be significant." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). As

noted above, Plaintiff has not presented any evidence that he suffered a physical injury and thus he

is barred by the PLRA from seeking psychological damages. Accordingly, the Court finds that

Plaintiff has failed to establish that he suffered a violation of any cognizable constitutional right as a result of any alleged altercation with JCADC employees.

Furthermore, the Court notes that throughout Plaintiff's pleadings he makes mention several times of witnessing other inmates being beaten. However, as stated earlier, Plaintiff has no standing to assert any claims on behalf of other inmates. *Seldin*, 422 U.S. at 498-99 (plaintiff must assert his own legal right and interests and cannnot rest his claim on the rights and interests of others.)

B. Denial of Adequate Medical Treatment:

Plaintiff alleges that he was denied medical treatment while incarcerated at the JCADC. Plaintiff's official capacity claim against the Defendants is, in reality, a claim against the office which they occupied at the time of the alleged incident and, ultimately, Jackson County. Therefore, to the extent Plaintiff brings this action against Defendant Broadus or Defendant Byrd in his official capacity, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the JCADC had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the JCADC's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Plaintiff claims that the Defendants failed to provide him with medical care. Specifically, Plaintiff claims that he suffers from kidney stones and that the Defendants failed to treat his pain related to the stones. (*See* Compl. [1-2] 2.) Plaintiff contends that "[he] was completely denied medical attention for [his] kidney stones. They never responded to my medical request or was never seen by a doctor so I was left puking and in pain for day." [sic] (*See* Am. [7-1] Compl. 4.) However, the record does not support Plaintiff's contention. The nurse at the JCADC examined and treated Plaintiff on April 21, 2008 for his complaint of flank pain. (*See* Exs. "10," "11" Attach. [63-1] Defs.'

Mot. Summ. J.)  The JCADC nurse notes that he has never seen where the Plaintiff has been diagnosed with kidney stones. *Id.*  A physician was consulted and Plaintiff was given medication for the pain with instructions to contact medical if his condition does not improve. *Id.*  Plaintiff acknowledges being called-in and treated on this occasion, but he asserts that he "barely remembers [it]" and that the pain was gone that day and he did not need any help then. (*See* Pl.'s Resp. [64-1] Mot. Summ. J. 10.)  Defendants contend that Plaintiff never contacted medical after that point regarding any flank pain. (*See* Ex. "11" Attach. Defs.' Mot. Summ. J.)  Other than the above mentioned allegation of inadequate medical care, Plaintiff presents no evidence that an official policy of the JCADC existed which violated his constitutional rights.  The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation.  At best, Plaintiff's assertion amounts to an isolated incident of negligent conduct, which, by itself, is insufficient to support the instant official capacity claim against the Defendants.

Plaintiff's Complaint also seeks liability against Defendant Broadus and Defendant Byrd in their individual capacities.  In response, they have plead the defense of qualified immunity.  In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established  constitutional  right.  *Siegert,* 500 U.S. at 231.  When an alleged constitutional violation for failure to provide adequate medical care stems from an episodic act or omission, the question is whether the state official acted with deliberate indifference to the individual's constitutional rights.  *Gibbs*, 254 F.3d at 548.  In order to prove deliberate indifference to serious medical needs, and thus a constitutional violation, a prisoner must show that the state official knew of and disregarded an excessive risk to inmate health or safety. *See Stewart v. Murphy*, 174 F.3d 530, 534-35 (5th Cir. 1999).

Deliberate indifference is more than mere negligence in providing or failing to provide medical treatment. *See Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982). The law is clear that unsuccessful medical treatment, mere negligence, neglect, nor medical malpractice gives rise to a section 1983 cause of action. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Furthermore, disagreement with medical treatment alone is insufficient to support a claim under section 1983. Rather, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)(quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Defendants contend, and the Court agrees, that Plaintiff has failed to meet his burden of establishing that Defendant Broadus or Defendant Byrd were deliberately indifferent to his serious medical needs. Plaintiff's only claim is that he was not treated for pain related to his alleged kidney stones. However, after a thorough review of the record, the Court is unable to conclude that Plaintiff has created a genuine issue as to whether Defendant Broadus or Defendant Byrd were deliberately indifferent to his serious medical needs. There is no evidence indicating that Plaintiff was ever denied any medical request, and certainly no evidence that Defendant Broadus or Defendant Byrd were aware that Plaintiff was in need of treatment for a serious medical need. Therefore, Plaintiff has not alleged sufficient facts to permit an inference that Defendant Broadus or Defendant Byrd was aware of a serious risk to Plaintiff's health. Furthermore, Plaintiff's Complaint alleges that, at worst, his complaints of pain from alleged kidney stones went unanswered. The Court finds that such a malady does not constitute a serious medical need, and therefore Plaintiff has failed to prove that Defendant Broadus or Defendant Byrd's inattention amounted to deliberate indifference to an

excessive risk to his safety or health. Furthermore, the available medical records indicate that Plaintiff received medical care commensurate with his needs. (*See* Exs. "10," "11" Attach. [63-1] Defs.' Mot. Summ. J.) Disagreement with medical treatment alone is insufficient to support a claim under section 1983. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). This issue does not rise to an actionable claim.

Additionally, Plaintiff makes an allegation that inmates are charged for dental complaints. Plaintiff claims that "[i]f your tooth is abcesed [sic] or needs pulling they charge you ($100 to $150) for extraction." (*See* Compl. [1-2] 7.) However, there is no evidence before this Court that Plaintiff had an abscessed tooth or a tooth which required being pulled. On March 10, 2008 Plaintiff complained about a tooth and it was examined by the JCADC nurse who noted that no edema was found. (*See* Exs. "10," "11" Attach. [63-1] Defs.' Mot. Summ. J.) The nurse determined that it was not an emergency situation. The nurse explained that for dental work that was not an emergency the inmate would have to pay the dentist. *Id.* The nurse also noted that if inmates have an emergency dental problem, the JCADC will treat the problem and pay for the same. *Id.* As stated earlier, the evidence shows that Plaintiff received medical care commensurate with his needs. There is no evidence that the Defendants were deliberately indifferent to Plaintiff's serious medical needs.

In the case at hand, the Court finds that Plaintiff has not presented any evidence sufficient to allege a violation of a clearly established constitutional right or any unreasonable conduct on the part of the Defendants. Thus, the Court finds that the Defendant Broadus and Defendant Byrd are entitled to qualified immunity.[3]

---

[3] The Court also finds that to the extent Plaintiffs' complaint could be construed to allege claims under state law, they are barred by provisions contained in the Mississippi Tort Claims Act, MISS. CODE ANN. § 11-46-1, *et seq*. Specifically, the Act provides that a government subdivision shall not be liable for a claim "of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary, or other such institution regardless of whether such claimant is or is not an inmate . . . when the claim is filed." MISS. CODE ANN. § 11-46-9(1)(m). The Court finds that because Plaintiff was an inmate at the time these events allegedly occurred,

## **CONCLUSION:**

After considering the evidence of record, the Court concludes that Plaintiff has failed to create a genuine issue as to whether Defendants violated Plaintiff's constitutional rights during his incarceration as a pretrial detainee at the JCADC. Plaintiff has presented no evidence indicating that the alleged conditions of confinement were imposed by Defendants for a punitive purpose. Further, Plaintiff's allegations that he was denied adequate medical care do not rise to the level of constitutional violations. Also, Plaintiff's assertions that he was subjected to excessive force at the hands of JCADC employees is conclusory and unsupported by any probative evidence. Accordingly, the Court recommends that Defendants' Motion [53-1] to Strike be granted, Plaintiff's Motion [52-1] for Summary Judgment be denied and Defendants' Motion [60-1] for Summary Judgment be granted, and Plaintiff's official and individual capacity claims be dismissed with prejudice.

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United States Auto Ass'n*, 79 F.3d 1425 (5th Cir. 1996).

**SO ORDERED** this the ___8th___ day of December, 2009.

---

any claims arising under Mississippi law as a result of these alleged events are barred by the above provision.

_____s/ John M. Roper, Sr._____
CHIEF UNITED STATES MAGISTRATE JUDGE